MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------X
NESTOR GONZALEZ NUNEZ, NESTOR
SANCHEZ, DANIEL VENTURA, and JOSE
MANUEL JIMENEZ MENDIOLA, *individually
and on behalf of others similarly situated,*

                                 *Plaintiffs,*

                -against-

R. GROSS DAIRY KOSHER RESTAURANT
INC.  (D/B/A MR. BROADWAY), YUVAL
ZARAI, and MOTI ZILBER,

                                *Defendants.*
----------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b)**

**ECF Case**

    Plaintiffs Nestor Gonzalez Nunez, Nestor Sanchez, Daniel Ventura, and Jose Manuel Jimenez Mendiola, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against R. Gross Dairy Kosher Restaurant Inc. (d/b/a Mr. Broadway), ("Defendant Corporation"), Yuval Zarai and Moti Zilber, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:



## NATURE OF ACTION

    1.      Plaintiffs are former employees of Defendants R. Gross Dairy Kosher Restaurant Inc. (d/b/a Mr. Broadway), Yuval Zarai, and Moti Zilber.

2.      Defendants own, operate, or control a kosher restaurant, located at 1372 Broadway, New York, New York 10018 under the name "Mr. Broadway".

3.      Upon information and belief, individual Defendants Yuval Zarai and Moti Zilber, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs are former employees of Defendants.

5.      Plaintiffs were employed as delivery workers at the restaurant located at 1372 Broadway, New York, New York 10018.

6.      Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to preparing food, dishwashing, stocking the refrigerator with drinks, cutting meat, vegetables and fruits, preparing salads, preparing ground beef, cooking, filling bags with pickles and garnishes, bringing up food for the cooks, helping in the kitchen, and serving food hereafter the ("non-tipped duties").

7.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

8.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

9.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

10.     Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that is lower than the lowered tip-credited rate.

12.     However, under both the FLSA and NYLL, Defendants are not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the lower tip-credited rate (and they still have failed to do so).

14.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

15.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938,

29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs. Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a kosher restaurant located in this district.  Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

20.     Plaintiff Nestor Gonzalez Nunez ("Plaintiff Gonzalez" or "Mr. Gonzalez") is an adult individual residing in Kings County, New York. Plaintiff Gonzalez was employed by Defendants at Mr. Broadway from approximately 2009 until on or about January 19, 2018.

21.     Plaintiff Nestor Sanchez ("Plaintiff Sanchez" or "Mr. Sanchez") is an adult individual residing in Bronx County, New York. Plaintiff Sanchez was employed by Defendants at Mr. Broadway from approximately 2008 until on or about January 19, 2018.

22.     Plaintiff Daniel Ventura ("Plaintiff Ventura" or "Mr. Ventura") is an adult individual residing in Kings County, New York. Plaintiff Ventura was employed by Defendants at Mr. Broadway from approximately 2002 until on or about January 12, 2018.

23.     Plaintiff Jose Manuel Jimenez Mendiola ("Plaintiff Jimenez" or "Mr. Jimenez") is an adult individual residing in Kings County, New York. Plaintiff Jimenez was employed by Defendants at Mr. Broadway from approximately April 2015 until on or about August 2017.

*Defendants*

24.     At all relevant times, Defendants own, operate, or control a kosher restaurant, located at 1372 Broadway, New York, New York 10018 under the name "Mr. Broadway".

25.     Upon information and belief, R. Gross Dairy Kosher Restaurant Inc. (d/b/a Mr. Broadway) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1372 Broadway, New York, New York 10018.

26.     Defendant Yuval Zarai is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Yuval Zarai is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Yuval Zarai possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

27.     Defendant Moti Zilber is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Moti Zilber is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Moti Zilber possesses

operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

28.     Defendants operate a kosher restaurant located in the Midtown section of Manhattan in New York City.

29.     Individual Defendants, Yuval Zarai and Moti Zilber, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

30.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

31.     Each Defendant possesses substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

32.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

33.     Upon information and belief, Individual Defendants, Yuval Zarai and Moti Zilber operate Defendant Corporation as either an alter ego of themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f)  intermingling assets and debts of their own with Defendant Corporation,

g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

34.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

35.    In each year from 2012 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

36.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that are used in the kosher restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

37.     Plaintiffs are former employees of Defendants who were employed as delivery workers. However, the tipped workers spent more than 20% of each shift performing the non-tipped duties described above.

38.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Nestor Gonzalez Nunez*

39.     Plaintiff Gonzalez was employed by Defendants from approximately 2009 until on or about January 19, 2018.

40.     Defendants ostensibly employed Plaintiff Gonzalez as a delivery worker.

41.     However, Plaintiff Gonzalez also was required to spend a significant portion of his work day performing the non-tipped duties described above.

42.     Although Plaintiff Gonzalez was ostensibly employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

43.     Plaintiff Gonzalez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

44.     Plaintiff Gonzalez's work duties required neither discretion nor independent judgment.

45.     Throughout his employment with Defendants, Plaintiff Gonzalez regularly worked in excess of 40 hours per week.

46.     From approximately January 2012 until on or about January 19, 2018, Plaintiff Gonzalez worked as a delivery worker from approximately 11:00 a.m. until on or about 10:00 p.m. or 10:15 p.m., 6 days a week (typically 78 to 79.5 hours per week).

47.     Throughout his employment, Defendants paid Plaintiff Gonzalez his wages by business check and personal check.

48.     From approximately January 2012 until on or about January 2016, Defendants paid Plaintiff Gonzalez $5.65 per hour.

49.     From approximately January 2016 until on or about December 31, 2017, Defendants only paid Plaintiff Gonzalez $7.50 per hour for 40 hours of work.

50.     From approximately January 1, 2018 until on or about January 19, 2018, Defendants only paid Plaintiff Gonzalez $8.65 per hour for 40 hours of work.

51.     In addition, from approximately May 2017 until on or about January 2018, Defendants paid Plaintiff Gonzalez an additional $100 per week by personal check for fixing the salad bar display.

52.     Plaintiff Gonzalez's pay never varied even when he was required to stay later or work a longer day than his usual schedule.

53.     For example, throughout his entire employment, Defendants required Plaintiff Gonzalez to work an additional 15 minutes past his scheduled departure time six days a week, and did not pay him for the additional time he worked.

54.     Furthermore, from approximately January 2016 until on or about January 19, 2018, Defendants paid Plaintiff Gonzalez only for the first 40 hours he worked.

55.     Plaintiff Gonzalez was never notified by Defendants that his tips were being included as an offset for wages.

56.     Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Gonzalez's wages.

57.     Defendants withheld a portion of Plaintiff Gonzalez's tips; specifically, Defendants pocketed approximately $20 per week and approximately 50% from large tips.

58.     For example, if Plaintiff Gonzalez received a $200 tip from customers, Defendants would pocket approximately $100.

59.     Plaintiff Gonzalez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

60.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gonzalez regarding overtime and wages under the FLSA and NYLL.

61.     Defendants never provided Plaintiff Gonzalez an accurate statement of wages, as required by NYLL 195(3).

62.     In fact, Defendants adjusted Plaintiff Gonzalez's paystubs so that they reflect inaccurate wages and hours worked.

63.     In addition, Defendants required Plaintiff Gonzalez to sign a schedule that had a false amount of hours worked.

64.     Defendants never gave any notice to Plaintiff Gonzalez, in English and in Spanish (Plaintiff Gonzalez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

65.     Defendants required Plaintiff Gonzalez to purchase "tools of the trade" with his own funds—including a vest, a lock and chain, a pair of lights, and a pair of gloves.

*Plaintiff Nestor Sanchez*

66.     Plaintiff Sanchez was employed by Defendants from approximately 2008 until on or about January 19, 2018.

67.     Defendants ostensibly employed Plaintiff Sanchez as a delivery worker.

68.     However, Plaintiff Sanchez also was required to spend a significant portion of his work day performing the non-tipped duties described above.

69.     Although Plaintiff Sanchez was ostensibly employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

70.     Plaintiff Sanchez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

71.     Plaintiff Sanchez's work duties required neither discretion nor independent judgment.

72.     Throughout his employment with Defendants, Plaintiff Sanchez regularly worked in excess of 40 hours per week.

73.     From approximately January 2012 until on or about January 19, 2018, Plaintiff Sanchez worked as a delivery worker from approximately 9:00 a.m. until on or about 9:00 p.m., Mondays through Thursdays and from approximately 9:00 a.m. until on or about 3:00 p.m., Fridays (typically 54 hours per week).

74.     Throughout his employment, Defendants paid Plaintiff Sanchez his wages by business check for the first 40 hours worked and a personal check for the 2 hours worked in the morning.

75.     Specifically, Defendants paid Plaintiff Sanchez only $20 for working from approximately 9:00 a.m. until on 11:00 a.m. preparing the salad bar Mondays through Fridays.

76.     From approximately January 2012 until on or about December 2015, Defendants paid Plaintiff Sanchez $5.65 per hour.

77.     From approximately January 2016 until on or about January 19, 2018, Defendants only paid Plaintiff Sanchez $7.50 per hour for 40 hours of work .

78.     However, Defendants did not pay Plaintiff Sanchez for his last week of employment.

79.     Plaintiff Sanchez's pay never varied even when he was required to stay later or work a longer day than his usual schedule.

80.     For example, Defendants required Plaintiff Sanchez to work from approximately 7:00 a.m. until on or about 9:00 a.m. five days a week in 2016 at least ten times a year in every other year, and did not pay him for the additional time he worked.

81.     Furthermore, from approximately January 2016 until on or about January 19, 2018, Defendants paid Plaintiff Sanchez only for the first 40 hours worked.

82.     Defendants never granted Plaintiff Sanchez any breaks or meal periods of any kind.

83.     Plaintiff Sanchez was never notified by Defendants that his tips were being included as an offset for wages.

84.     Defendants withheld a portion of Plaintiff Sanchez's tips; specifically, Defendants pocketed approximately 50% from large catering orders.

85.     For example, Plaintiff Sanchez received a $500 tip from a large catering order, Defendants would pocket approximately $250.

86.     Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Sanchez's wages.

87.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Sanchez regarding overtime and wages under the FLSA and NYLL.

88.     Defendants never provided Plaintiff Sanchez an accurate statement of wages, as required by NYLL 195(3).

89.     In fact, Defendants adjusted Plaintiff Sanchez's paystubs so that they reflected inaccurate wages and hours worked.

90.     In addition, Defendants required Plaintiff Sanchez to sign a schedule that had a false amount of hours worked.

91.     Defendants never gave any notice to Plaintiff Sanchez, in English and in Spanish (Plaintiff Sanchez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

92.     Defendants required Plaintiff Sanchez to purchase "tools of the trade" with his own funds—including a bicycle, four helmets and a raincoat.

*Plaintiff Daniel Ventura*

93.     Plaintiff Ventura was employed by Defendants from approximately 2002 until on or about January 12, 2018.

94.     Defendants ostensibly employed Plaintiff Ventura as a delivery worker.

95.     However, Plaintiff Ventura also was required to spend a significant portion of his work day performing the non-tipped duties described above.

96.     Although Plaintiff Ventura was ostensibly employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

97.     Plaintiff Ventura regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

98.     Plaintiff Ventura's work required neither discretion nor independent judgment.

99.     Throughout his employment with Defendants, Plaintiff Ventura regularly worked in excess of 40 hours per week.

100.     From approximately January 2012 until on or about January 12, 2018, Plaintiff Ventura worked as a delivery worker from approximately 9:00 a.m. until on or about 9:00 p.m., Mondays through Thursdays and from approximately 9:00 a.m. until on or about 3:00 p.m., Fridays and Sundays (typically 60 hours per week).

101.     Throughout his employment, Defendants paid Plaintiff Ventura his wages by check.

102.     From approximately January 2012 until on or about December 31, 2015, Defendants paid Plaintiff Ventura $5.65 per hour.

103.     From approximately January 2016 until on or about December 2017, Defendants only paid Plaintiff Ventura $7.50 per hour for 40 hours of work.

104.     From approximately January 1, 2018 until on or about January 12, 2018, Defendants only paid Plaintiff Ventura $8.65 per hour for 40 hours of work.

105.     Plaintiff Ventura's pay never varied even when he was required to stay later or work a longer day than his usual schedule.

106.     For example, Defendants required Plaintiff Ventura to work an additional hour past his scheduled departure time one day a week during the summer months, and never paid him for the additional time he worked.

107.     Similarly, defendants required Plaintiff Ventura to come in to work three hours prior to his scheduled start time every week in 2012 and 2013, ten times in 2014 and seven times in 2015, and did not compensate him for the additional time he worked.

108.     In addition, on numerous occasions, defendants required Plaintiff Ventura to work at catering jobs from approximately 2:00 p.m. until on or about 9:00 p.m. on Fridays and did not compensate him for the additional time he worked.

109.   Furthermore, from approximately January 2016 until on or about January 12, 2018, Defendants paid Plaintiff Ventura only for the first 40 hours worked.

110.   Plaintiff Ventura was never notified by Defendants that his tips were being included as an offset for wages.

111.   Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Ventura's wages.

112.   Defendants withheld a portion of Plaintiff Ventura's tips; specifically, Defendants pocketed approximately 50% from his earned tips.

113.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ventura regarding overtime and wages under the FLSA and NYLL.

114.   Defendants never provided Plaintiff Ventura an accurate statement of wages, as required by NYLL 195(3).

115.   In fact, Defendants adjusted Plaintiff Ventura's paystubs so that they reflected inaccurate wages and hours worked.

116.   In addition, Defendants required Plaintiff Ventura to sign a schedule that had a false amount of hours worked.

117.   Defendants did not give any notice to Plaintiff Ventura, in English and in Spanish (Plaintiff Ventura's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

118.   Defendants required Plaintiff Ventura to purchase "tools of the trade" with his own funds—including 2 pair of bicycles, 15 pair of lights, a helmet, a chain and lock.

*Plaintiff Jose Manuel Jimenez Mendiola*

119.     Plaintiff Jimenez was employed by Defendants from approximately April 2015 until on or about August 2017.

120.     Defendants ostensibly employed Plaintiff Jimenez as a delivery worker.

121.     However, Plaintiff Jimenez also was required to spend a significant portion of his work day performing the non-tipped duties described above.

122.     Although Plaintiff Jimenez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

123.     Plaintiff Jimenez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

124.     Plaintiff Jimenez's work duties required neither discretion nor independent judgment.

125.     From approximately April 2015 until on or about July 2015, Plaintiff Jimenez worked as a delivery worker from approximately 10:00 a.m. until on or about 3:00 p.m., Mondays through Fridays (typically 25 hours per week).

126.     From approximately August 2015 until on or about August 2017, Plaintiff Jimenez worked as a delivery worker from approximately 7:00 a.m. until on or about 9:00 p.m. to 10:00 p.m., 3 days a week and from approximately 10:00 a.m. until on or about 3:00 p.m., 2 days a week (typically 52 to 55 hours per week).

127.     Throughout his employment, Defendants paid Plaintiff Jimenez his wages by personal check.

128.     From approximately April 2015 until on or about January 2016, Defendants paid Plaintiff Jimenez $5.65 per hour.

129.     From approximately January 2016 until on or about August 2017, Defendants only paid Plaintiff Jimenez $7.50 per hour for 40 hours of work.

130.    Plaintiff Jimenez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

131.    For example, Defendants required Plaintiff Jimenez to work an additional hour past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

132.    Furthermore, from approximately January 2016 until on or about August 2017, Defendants paid Plaintiff Jimenez only for the first 40 hours worked.

133.    Plaintiff Jimenez was never notified by Defendants that his tips were being included as an offset for wages.

134.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Jimenez's wages.

135.    Defendants withheld a portion of Plaintiff Jimenez's tips; specifically, Defendants pocketed approximately $20 per week.

136.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Jimenez regarding overtime and wages under the FLSA and NYLL.

137.    Defendants did not provide Plaintiff Jimenez an accurate statement of wages, as required by NYLL 195(3).

138.    In fact, Defendants adjusted Plaintiff Jimenez's paystubs so that they reflected inaccurate wages and hours worked.

139.    In addition, Defendants required Plaintiff Jimenez to sign a schedule that had a false amount of hours worked.

140.    Defendants did not give any notice to Plaintiff Jimenez, in English and in Spanish (Plaintiff Jimenez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

141.    Defendants required Plaintiff Jimenez to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, light for the bicycle, a vest and a lock.

*Defendants' General Employment Practices*

142.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

143.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

144.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

145.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but never provided them with any additional compensation.

146.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

147.    Defendants' time keeping system never reflected the actual hours that Plaintiffs worked.

148.    Defendants required all delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

149.    These Plaintiffs and all similarly situated employees, were ostensibly employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-tipped duties.

150.     These Plaintiffs and all other tipped workers were paid at a rate that is lower than the lowered tip-credit rate by Defendants.

151.     However, under state law, Defendants are not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceed 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

152.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she was assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

153.     The delivery workers' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

154.     In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and never paid them at a rate that is lower than the lowered tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

155.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

156.     Defendants failed to inform Plaintiffs who received tips, that their tips are being credited towards the payment of the minimum wage.

157.     Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

158.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

159.     Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

160.     Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

161.     Plaintiffs were paid their wages through a combination of personal checks and business checks.

162.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

163.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

164.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

165.    Defendants' unlawful conduct is intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

166.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

167.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

168.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

169.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and were subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records required by the FLSA.

170.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## **FIRST CAUSE OF ACTION**

## **VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA**

171.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

172.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

173.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

174.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

175.     In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate.

176.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

177.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

178.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

179.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

180.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation is willful within the meaning of 29 U.S.C. § 255(a).

181.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

182.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

183.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

184.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

185.    Defendants' failure to pay Plaintiffs the minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

186.     Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

187.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

188.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

189.     Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of N.Y. Lab. Law § 663.

190.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

191.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

192.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 146-1.6.

193.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours is willful within the meaning of NYLL § 663.

194.     Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

195.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

196.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

197.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE WAGE STATEMENT PROVISIONS**

**OF THE NEW YORK LABOR LAW**

198.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

199.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

200.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

201.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

202.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

203.     Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS

## IN VIOLATION OF THE NEW YORK LABOR LAW

204.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

205.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

206.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

207.     Defendants were unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

208.     Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

209.     Plaintiffs were damaged in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wages, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation,

and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)    Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)    Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)    Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(m)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(p)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(q)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
        January 31, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:     _____/s/ Michael Faillace_____
        Michael Faillace [MF-8436]
        60 East 42nd Street, Suite 4510
        New York, New York 10165
        Telephone: (212) 317-1200
        Facsimile: (212) 317-1620
        *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 12, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Daniel Ventura Garcia

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      12 de enero de 2018

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
————

Faillace@employmentcompliance.com

January 17, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              **Jose Manuel Jimenez Mendiola**

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:               17 de enero de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 12, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Nestor Gonzales Nunez

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           12 de enero de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 12, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Nestor Sanchez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                        12 de enero 2018

*Certified as a minority-owned business in the State of New York*