ELLENOFF GROSSMAN & SCHOLE LLP
Amanda M. Fugazy
Paul P. Rooney
Stephania C. Sanon
1345 Avenue of the Americas, 11th Fl.
New York, New York 10105
Tel: (212) 370-1300
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

NESTOR GONZALEZ NUNEZ, NESTOR
SANCHEZ, DANIEL VENTURA, JOSE MANUEL
JIMENEZ MENDIOLA, JUAN CARLOS
MOREIRA, and FRANCISCO GOMEZ RAMIREZ,
*individually and on behalf of others similarly
situated*,

                            Plaintiffs,

                -against-

R. GROSS DAIRY KOSHER RESTAURANT
INC., (d/b/a Mr. Broadway), YUVAL ZARAI, and
MOTI ZILBER,

                          Defendants.

------------------------------------------------------------------X

Case No. 18-CV-00861 (GBD)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
FOR SANCTIONS AGAINST PLAINTIFF JUAN CARLOS MOREIRA
AND PLAINTIFFS' COUNSEL UNDER RULE 11 AND, ALTERNATIVELY,
THE COURT'S INHERENT POWER AND TO DISQUALIFY PLAINTIFFS' COUNSEL**

Dated: New York, New York
      September 12, 2019

{00721542.DOCX.2}

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

SUMMARY OF FACTS ................................................................................... 1

    A.  Moreira Maintained Conflicting Allegations Regarding The Days And Hours He Worked At Two Different Restaurants In Two Different Lawsuits For Over A Year. ....... 1

    B.  Moreira Filed An Eleventh-Hour Amended Complaint In Little Basil. ............................. 4

    C.  The Faillace Firm Has a History of Litigation Misconduct. ................................. 5

    D.  Defendants Have Given Moreira and His Counsel Notice of This Rule 11 Motion. .......... 7

ARGUMENT ............................................................................................. 7

POINT I: THE COURT SHOULD DISMISS MOREIRA'S CLAIMS UNDER RULE 11 AND THE COURT'S INHERENT POWERS ................................................................ 7

    A.  The Court Should Dismiss Moreira's Claims Under Rule 11. ............................. 7

    1.  Moreira's Contradictory Pleadings and Refusal to Correct the Record Violate Rule 11. .... 7

    2.  Moreira's Eleventh-Hour Second Amended Complaint In Little Basil Cannot Save His Claims In The Case At Bar ....................................................................... 10

    3.  Moreira's Contradictory Pleadings and Persistence In Perpetuating Falsehoods In This Case Merit Dismissal of His Claims. ........................................................ 12

    B.  Alternatively, the Court Should Dismiss Moreira's Claims Pursuant To Its Inherent Power. ............................................................................................. 15

POINT II: THE COURT SHOULD AWARD DEFENDANTS THEIR FEES AS A SANCTION UNDER RULE 11 AND THE COURT'S INHERENT POWER ...................... 19

    A.  Defendants Should Be Awarded Their Attorneys' Fees and Costs for Defending Moreira's Claims for the Past Year. ................................................................ 19

    B.  The Court Should Use Its Inherent Power To Grant Defendants Their Fees and Costs.... 21

POINT III: THE COURT SHOULD DISQUALIFY PLAINTIFFS' COUNSEL ...................... 22

CONCLUSION ........................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdelhamid v. Altria Group, Inc.*,
  515 F.Supp.2d 384 (S.D.N.Y.2007) ................................................................. 13

*Almeciga v. Ctr. for Investigative Reporting, Inc.*,
  185 F. Supp. 3d 401 (S.D.N.Y. 2016) ............................................................. 13

*Amfosakyi v. Frito Lay, Inc.*,
  496 F. App'x 218 (3d Cir. 2012) ..................................................................... 16

*Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*,
  712 F. Supp. 2d 255 (S.D.N.Y. 2010) ............................................................. 19

*Azuike v. BNY Mello*n,
  962 F.Supp.2d 591 (S.D.N.Y. 2013) ................................................................. 8

*Brokerage Corp. v. Reeve*,
  196 F.R.D. 13 (S.D.N.Y.2000) .......................................................................... 9

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
  498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) .................................. 8

*Cerruti 1881 S.A. v. Cerruti, Inc.*,
  169 F.R.D. 573 (S.D.N.Y. 1996) ..................................................................... 22

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ...................................................................................... 15, 21

*Colliton v. Cravath, Swaine & Moore LLP*,
  2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) .............................................. 9, 11

*Comonfort v. Les Brasseurs, Inc.*,
  Case No. 16-cv-6389 (S.D.N.Y) ....................................................................... 6

*Corroon v. Reeve*,
  258 F.3d 86 (2d Cir.2001) ................................................................................. 9

*Eastway Const. Corp. v. City of New York.*,
  821 F.2d 121 (2d Cir. 1987) ............................................................................ 19

*Elfoulki v. Brannons Sandwich Shop, LLC*,
  2016 WL 3542458 (S.D.N.Y. June 22, 2016) ................................................. 21

*Galin v. Hamada*,
  283 F.Supp.3d 189 (S.D.N.Y. 2017) ................................................................. 8

*Hargrove v. Riley*,
   2007 WL 389003 (E.D.N.Y. Jan. 31, 2007)..................................................... 14, 18

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
   322 U.S. 238 (1944) ......................................................................................... 15

*International Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
   2019 WL 1244493 (S.D.N.Y. Mar. 18, 2019) ........................................................ 8

*James v. Gage*,
   2019 WL 1429520 (S.D.N.Y. Mar. 29, 2019) ...................................................... 11

*Lipin v. National Union Fire Ins. Co. of Pittsburgh, Pa.*,
   202 F. Supp. 2d 126 (S.D. N.Y. 2002).................................................................. 20

*Margo v. Weiss*,
   213 F.3d 55 (2d Cir. 2000)................................................................................ 10

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*,
   191 F. Supp. 2d 440 (S.D.N.Y. 2002).................................................................. 16

*Moreira v. J&I Thai, Inc. (d/b/a Little Basil Thai Restaurant)*,
   Case No. 18-cv-3261 (AT)................................................................................... 2

*Nunez v. Bistro N.Y Development*,
   Case No. 13-cv-0426 (S.D.N.Y.) .......................................................................... 7

*Offor v. Mercy Med. Ctr.*,
   327 F.R.D. 32 (E.D.N.Y. 2018) ......................................................................... 19

*Polar Int'l Brokerage Corp.*,
   196 F.R.D. at 18 ........................................................................................... 9, 10

*Profile Publ'g & Mgmt. Corp. APS v. Musicmaker.com., Inc.*,
   242 F. Supp. 2d 363 (S.D.N.Y. 2003).................................................................. 20

*Russell v. Hollister Corp.*,
   2014 WL 2723236 (S.D.N.Y. June 17, 2014)...................................................... 11

*Scholastic, Inc. v. Stouffer*,
   221 F.Supp.2d 425 (S.D.N.Y.2002)................................................................ 17, 22

*Schottenstein v. Schottenstein*,
   230 F.R.D. 355 (S.D.N.Y. 2005) ....................................................................... 21

*Shangold v. Walt Disney Co.*,
   2006 WL 71672 (S.D.N.Y. Jan. 12, 2006)............................................... 15, 16, 17

*Wallace v. New York City Dep't of Corr.*,
  1996 WL 586797 (E.D.N.Y. Oct. 9, 1996) ............................................................................... 11

*Watkins v. Smith*,
  2013 WL 655085 (S.D.N.Y. Feb. 22, 2013) ............................................................................ 20

*West v. Goodyear Tire & Rubber Co.*,
  167 F.3d 776 (2d Cir. 1999) .................................................................................................... 18

## Court Rules

Fed. R. Civ. P. 11 ............................................................................................................ 7, 9, 13, 19

Fed. R. Civ. P. 6 ............................................................................................................................. 7

Fed.R.Civ.P. 12(b)(6)..................................................................................................................... 13

## PRELIMINARY STATEMENT

Plaintiff Juan Carlos Moreira ("Moreira"), through his attorney Joshua Androphy ("Androphy") of Michael Faillace & Associates, P.C. (the "Faillace Firm"), filed two separate lawsuits (the instant case and one against Little Basil Thai Restaurant) alleging Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") violations, and claiming he worked at each restaurant on the same days, during the same hours, and during the same time periods.  Obviously, that is simply not possible. Moreover, Moreira and his attorneys have persisted in perpetuating both concurrent claims, even though both cannot be true, and declined to correct the record, despite the undersigned's repeated requests to do so.

Sanctions under Rule 11 and the Court's inherent power are appropriate where, as here, an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that the claim is groundless. Accordingly, Defendants R. Gross Dairy Kosher Restaurant, Inc. d/b/a Mr. Broadway, Yuval Zurai, and Moti Zilber ("Defendants") move pursuant to Rule 11 and the Court's inherent powers to dismiss Moreira's claims in this case and for sanctions in the form of attorneys' fees against Moreira and the Faillace Firm.

Furthermore, the Faillace Firm now has created for itself a conflict of interest because it has a duty to correct the record, which, of course, will prejudice its other clients.  Accordingly, the Faillace Firm must be disqualified from this action unless it obtains the informed consent of its other five clients in this case.

## SUMMARY OF FACTS

### A.  Moreira Maintained Conflicting Allegations Regarding The Days And Hours He Worked At Two Different Restaurants In Two Different Lawsuits For Over A Year.

Plaintiff Moreira, using the Faillace Firm and Androphy, filed two lawsuits alleging wage-hour claims under the FLSA and the NYLL: the case at bar and *Moreira v. J&I Thai, Inc.*

*(d/b/a Little Basil Thai Restaurant)*, Case No. 18-cv-3261 (AT) (hereinafter, "Little Basil").

In both cases, Mr. Moreira alleges that he worked the same hours, during the same time period, at both Defendants' restaurant <u>and</u> Little Basil:

- March 2015 to December 2015, 5:00 p.m. to 10:00 p.m., five days per week. *See* Mr. Broadway Am. Compl. ¶ 134 and Little Basil Compl. ¶ 45.[1]

- January 2016 to February 2016, 5:00 p.m. to 10:00 p.m., on Wednesdays and Thursdays. *See* Mr. Broadway Am. Compl. ¶ 134 and Little Basil Compl. ¶ 46.[2]

Obviously, the allegations in both Complaints cannot be true.

The following timeline demonstrates Moreira's and the Faillace firm's repeated failures to correct the record and continuing perpetuation of falsehoods even after Defendants' counsel directly confronted them with their contradictory allegations:

- January 31, 2018 - Faillace Firm commences the instant lawsuit by filing the initial Complaint.

- March 16, 2018 – Moreira, files a Consent to Sue form, joining the instant lawsuit.

- April 13, 2018 – Moreira, through the Faillace Firm, commences the lawsuit in *Little Basil* by filing his initial complaint in that case.

- September 14, 2018 – Moreira, through the Faillace Firm, files an Amended Complaint in the instant lawsuit, alleging he worked at Mr. Broadway during the same hours on the same days he alleges he worked at Little Basil in his lawsuit against Little Basil.

- October 24, 2018 - Moreira, through the Faillace Firm, filed an Amended Complaint in *Little Basil*, again asserting the same hours on the same days in the same time period as he alleged in *Mr. Broadway*.

---

[1] The Complaint in *Moreira v. J&I Thai, Inc. (d/b/a Little Basil Thai Restaurant)* is annexed to the Declaration of Stephania Sanon, executed on September 10, 2019 ("Sanon Decl.") as Exhibit "2."

[2] Moreira alleges in *Little Basil* that from January 2016 to February 2016, he worked 11:00 a.m. to 11:00 p.m. Wednesdays and Thursdays. Little Basil Compl. ¶ 46, Little Basil FAC ¶ 48. He then alleges in Mr. Broadway that during the same time period he worked 5 days a week from 7:00 a.m. to 3:00 p.m. and then again from 5:00 p.m. to 10:00 p.m. and Fridays from 10 a.m. to 2:00 or 3:00 p.m. Mr. Broadway Am. Compl. ¶ 134. Mr. Broadway is closed on Saturdays. Therefore, the only days Moreira could be referring to in his assertion that he worked "5 days a week" are Monday, Tuesday, Wednesday, Thursday and Sunday which include Wednesday and Thursday.

- February 26, 2019 - Moreira, through his attorneys, moved for court approval of a $25,000.00 settlement in *Little Basil*. The Court denied the motion because none of the corporate defendants were represented by counsel. Little Basil Dkt. No. 55.
  - May 21, 2019- Androphy wrote to the *Little Basil* Court stating that Plaintiff intended to file a notice of voluntary dismissal as against the corporate defendants and further requested approval of the proposed settlement. Little Basil Dkt. No. 56.
  - June 19, 2019 - The *Little Basil* Court again denied Moreira's request for approval of the settlement because the attorneys' fee portion was too high and directed Moriera to file a notice of voluntary dismissal against the corporate defendants and directed the parties to file a revised settlement agreement reducing the attorneys' fees. Little Basil Dkt. No. 57.

- Moreira did not correct the record in any of the above filings regarding his motion for settlement approval in *Little Basil*.

- June 24, 2019 - Defense counsel deposed Moreira in the instant case. Moreira's deposition testimony directly contracted his initial and First Amended Complaint in *Little Basil* on every important point, from his tenure, to hours worked, to his schedule and pay.[3]

- July 1, 2019 - Defense counsel sent a letter to Androphy asking him to dismiss Moreira from this case based upon the obvious falsehoods he presented to the Court.

- July 2, 2019 - Defense counsel filed a letter with the Court apprising it of Moreira's fraud on the Court.

- July 8, 2019 - Moreira filed a notice of discontinuance without prejudice as against the unrepresented corporate defendants in *Little Basil*.

- July 12, 2019 - Moreira replied to Defense counsel's letter regarding Moreira's fraud on the court by filing his own letter with the court. In that letter, Moreira, and Androphy, "acknowledge that the amended complaint in this action and the complaint in the action *Moreira v. J&I Thai, Inc*., incompatibly allege that Moreira worked at both Mr. Broadway and Little Basil Thai at the same times from March 2015 through February 2016."  Moreira also attached to his letter a damages chart he allegedly submitted to defendants in *Little Basil* stating that he worked at Little Basil for two years, and not three years, as alleged in the two separate complaints filed in *Little Basil* as of that date. The damages chart alleges he worked from January 2016 until March 2018 – 31 hours per week.

---

[3] A chart detailing the discrepancies between the first two complaints he filed in *Little Basil* and Moreira's deposition testimony he provided in the instant case regarding his work at Little Basil is annexed to the Sanon Decl. as Exhibit "5."

- August 1, 2019 - Moreira filed a revised Settlement Agreement in *Little Basil*. Little Basil Dkt. No. 62. The terms of that Agreement show that Moreira and Androphy make no attempt to correct the record. Notably, Moreira did not decrease the settlement amount of $25,000.00 that he reached with Little Basil back in February 2019, despite giving deposition testimony significantly reducing his Little Basil schedule by 9 to 28 hours per week and removing one whole year from his alleged tenure at Little Basil. See Little Basil FAC, ¶¶47-48, Moreira Tr. 111,152-154, Little Basil Dkt No. 62.

### B. Moreira Filed An Eleventh-Hour Amended Complaint In Little Basil.

On August 5, 2019, a few days after filing a revised Settlement Agreement in *Little Basil*, Moreira filed a Second Amended Complaint in *Little Basil*. *Little Basil* Dkt. No. 63. Defendants are unaware of any other case in which a plaintiff filed an amended complaint more than five months *after* the parties reached a settlement and submitted settlement papers for court approval. The Court approved the *Little Basil* settlement two days later, on August 7, 2019. Little Basil Dkt. No. 64. Conveniently for Moreira, the Second Amended Complaint in *Little Basil* alleges that Moreira worked a schedule which no longer overlaps with his Mr. Broadway schedule, but still directly contradicts Moreira's allegations in the first two *Little Basil* complaints and his deposition testimony in the case at bar, as shown in the chart below:

| Original Complaint (April 13, 2018) and First Amended Complaint in Little Basil, ¶¶ 45-46 | Deposition in *Mr. Broadway* June 24, 2019, Sanon Decl. Exh. 4 | Second Amended Complaint August 5, 2019, ¶¶ 37-39 |
|---|---|---|
| Schedule at Little Basil: Mar. 2015 – Dec. 2015: **7 days per week** 5:00 p.m. – 10:00 p.m.  Jan. 2016 – March 2018: 3 days per week- **Wednesdays and Thursdays** – 11:00 a.m. – 11:00 p.m. and **Saturdays** 4:00 p.m. – 11:00 p.m. | Schedule at Little Basil: March 2016 – February 2017 – **only worked Saturdays**.  February 2017 – March 2018 **Wednesday and Thursday** – 11:00 a.m. – 10:00 p.m. | Schedule at Little Basil: March 2016 - April 2016: **Monday – Friday** – 1:00 p.m. – 10/11:00 p.m. **Saturday** – 4:00 p.m. – 11:00 p.m.  May 2016 – June 2016: **Monday – Saturdays** – 11:00 a.m. – 10/11:00 p.m. June 2016 – March 2018 **Wednesday and Thursday** – |

| | | 4:00 p.m. – 11:00 p.m. **Saturday** – 4:00 p.m. – 11:00 p.m. |
|---|---|---|

Moreover, Moreira's allegations in the *Little Basil* Second Amended Complaint, regarding his tenure and the hours he worked, directly conflict with the damages chart detailing his work at Little Basil which he filed with a letter to this Court on July 12, 2019. *Mr. Broadway* Dkt No. 48; *Little Basil* SAC, Sanon Decl. Ex. 7. The Second Amended Complaint in *Little Basil*, in contradiction of that damages chart, states that:

- o Moreira began working at Little Basil in March 2016 (instead of January 2016 as listed in the damages chart)

- o From March 2016 – April 2016, Moreira worked 22 - 27 hours per week (instead of 31 hours as listed in the damages chart).

- o From May 2016 – June 2016, Moreira worked 66 - 72 hours per week (instead of 31 hours as listed in the damages chart).

- o From May 2016 – March 2018, Moreira worked 29 - 31 hours per week (instead of 31 hours as listed in the damages chart).

Thus, Moreira alleges, in the damages chart he filed in response to Defendants' July 2, 2019 letter motion, two more months of work (January and February 2016) than he alleged in the *Little Basil* Second Amended Complaint and approximately double the amount of hours he claimed he worked in the *Little Basil* Second Amended Complaint. *Mr. Broadway* Dkt No. 48, Ex. A; *Little Basil* SAC, Sanon Decl. Ex. 7, ¶¶ 37-39.

### C. The Faillace Firm Has a History of Litigation Misconduct.

Earlier this year, disciplinary proceedings were instituted by the Attorney Grievance Committee for the First Judicial Department, against Plaintiffs' counsel, Androphy, for improper remittal of an erroneously issued settlement check to his client which his client was not entitled to receive in violation of New York Rules of Professional Conduct, Rule 1.15(c)(4). *Matter of*

*Androphy*, 2019 N.Y. Slip Op. 00525 (N.Y. App. Jan. 24, 2019).  Androphy admitted that his actions violated Rule 1.15(c)(4), but that he did so unintentionally and mistakenly as he thought he was ethically obligated to submit the check to his client.  Based on this admission, the Committee publicly censured Mr. Androphy.

Last year, the Faillace Firm was forced to withdraw as counsel from an FLSA lawsuit after the Court determined during a bench trial that the plaintiff had perjured himself in his testimony regarding his length of employment. *See Castillo v. 374 Food, Inc*. Case No. 16-cv-6287 (KPF) (S.D.N.Y.). The plaintiff there alleged in his complaint and maintained during the trial that he worked for defendants for eight months. In contrast, defendants maintained throughout the course of the litigation that plaintiff worked no more than six weeks. After the bench trial, the Court issued an opinion, concluding "Plaintiff has vastly overstated the period of his employment at Tribeca Bagels, to the point of perjuring himself." *Id.*, Dkt. No. 59, p.2.

In *Comonfort v. Les Brasseurs, Inc*., Case No. 16-cv-6389 (S.D.N.Y), Judge Peck imposed sanctions in the form of attorneys' fees against the Faillace Firm for lying about plaintiff's understanding of the claims in the case. *Id.*, Dkt No. 39. During a mediation before Judge Peck, an attorney from the Faillace Firm represented that she was translating the entire mediation to plaintiff in Spanish. *Id*. at 1. Plaintiff's counsel further acknowledged that she and other attorneys at the Faillace Firm had only spoken in Spanish with the plaintiff, presumably because this was the only language in which plaintiff was fluent. *Id*. However, during plaintiff's deposition, where a Spanish interpreter was also present, plaintiff admitted under oath that he does not understand Spanish. *Id*. Rather, plaintiff spoke an alternative Spanish dialect, Mezteco, which prevented him from answering even simple questions through the interpreter in the deposition. *Id*.  Notably, prior to the deposition, plaintiff's counsel had confirmed with defense

counsel that a Spanish interpreter would be needed. *Id*. Based on these troubling facts, Judge Peck ordered the Faillace form to pay attorneys' fees to defendants.

Additionally, in *Nunez v. Bistro N.Y Development*, Case No. 13-cv-0426 (S.D.N.Y.), an FLSA action, the Court found that the Faillace Firm brought suit in the name of a party it did not represent, attempted to negotiate a settlement based upon that representation and provided inconsistent descriptions of how these events came to pass.  *See Id.*, Dkt. No. 56.  In ruling on defendants' sanctions motion in that case, the court held that plaintiffs' counsel's inconsistent statements, including their "inaccurate representation to the court …that she had retainers for all parties" fell short of the duties owed as officers of the court. However, it exercised its discretion to not impose sanctions on plaintiffs' counsel. *Id.* at p. 10.

### D. **Defendants Have Given Moreira and His Counsel Notice of This Rule 11 Motion.**

On August 16, 2019, Defendants served Plaintiff's counsel with a notice of motion that Defendants intend to seek sanctions under Rule 11, a draft of this brief, and a letter requesting that Moreira and the Faillace Firm withdraw Moreira's claims and the reasons why.  *See* Sanon Decl. ¶ 14, Ex. "12."  As service of the notice was by overnight courier, the deadline for Plaintiff to withdraw the Moreira's claims expired on September 9, 2019.  *See* Fed. R. Civ. P. 6 and 11.

### ARGUMENT

### POINT I:
### THE COURT SHOULD DISMISS MOREIRA'S CLAIMS
### UNDER RULE 11 AND THE COURT'S INHERENT POWERS

### A. **The Court Should Dismiss Moreira's Claims Under Rule 11.**

#### 1. **Moreira's Contradictory Pleadings and Refusal to Correct the Record Violate Rule 11.**

Federal Rule of Civil Procedure 11(b)(3) provides, in relevant part, that "[b]y presenting to the court a pleading, written motion, or other paper ... an attorney ... certifies that to the best of

the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . "  Rule 11 imposes on attorneys "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991).

"Rule 11 is . . . implicated 'where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that [the claim is] groundless.'" *International Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 2019 WL 1244493, at *7 (S.D.N.Y. Mar. 18, 2019) (quoting *Azuike v. BNY Mello*n, 962 F.Supp.2d 591, 597 (S.D.N.Y. 2013) (internal citation and quotations omitted)); *see also Galin v. Hamada*, 283 F.Supp.3d 189, 203 (S.D.N.Y. 2017) ("Thus, the Court concludes that, once discovery closed, Galin and his counsel had an obligation under Rule 11 to withdraw the [c]omplaint because they knew—by that point if not earlier—that their allegations on the central (and dispositive) issue in the case were utterly lacking in support.) (internal citation and quotation marks omitted).

If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

There can be no more obvious violation than Moreira's and Androphy's filings of two self-contradictory pleadings five months apart and their subsequent refusal to withdraw their frivolous claims.  This Court has repeatedly held that such conduct merits Rule 11 sanctions.

For example, this Court imposed sanctions where Plaintiff filed an amended complaint that directly contradicted his original complaint in order to avoid dismissal. *See Colliton v.*

*Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at \*13-14 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009).  In *Colliton*, plaintiff's original complaint alleged that his claims of intentional infliction of emotional distress arose out of events "[d]uring [his] employment with the defendant."  After defendant argued that such claims would be barred by the one-year statute of limitations, Colliton amended his complaint to include allegations that defendant's abuses continued "throughout the Employment Period and thereafter, through January 16, 2008."  *Colliton*, 2008 WL 4386764, at \*13–14.  The Court held that Colliton's contradictory pleadings violated Rule 11 because "[u]nder Rule 11(b)(3), plaintiffs must have an adequate, non-frivolous basis in fact for their claims. It is clear that sanctions are appropriate where facts have been concocted. Self-contradictory assertions, such as Colliton's, clearly lack reasonable evidentiary support, in violation of Rule 11(b)(3)." *Colliton*, at \*14 (citing *Polar Int'l Brokerage Corp. v. Reeve,* 196 F.R.D. 13, 18 (S.D.N.Y.2000) *aff'd in part, dismissed in part on other grounds sub. nom., Corroon v. Reeve,* 258 F.3d 86 (2d Cir.2001)).

Similarly, in the *Polar Int'l Brokerage*, *supra*, a securities class action case, this Court sanctioned an attorney for taking two completely contradictory positions.  The court explained that "[i]n March 1999, Lead Counsel represented to this Court in both written submissions and during oral argument that the Trinity Offer—the challenged tender offer at the heart of plaintiffs' suit—was neither inadequate nor unfair. . . . Now, however, Lead Counsel takes precisely the opposite position arguing to this Court that the Trinity Offer is 'grossly inadequate' and unfair." *Id.*, 196 F.R.D. at 18. The Court held this violated Rule 11 because, "[t]here is simply no innocent, nonsanctionable explanation for counsel's conflicting assertions to this Court and to the plaintiff class they purport to represent. Either plaintiffs' counsel violated Rule 11(b)(3) in March 1999 when they repeatedly stated—based upon their examination of documents and consultation

with financial experts—that the Tender Offer was fair, or counsel violated Rule 11(b)(3) in October 1999 by filing an amended complaint alleging that the Tender Offer was unfair." *Polar Int'l Brokerage Corp.*, 196 F.R.D. at 18.

Moreover, the Second Circuit affirmed an award of Rule 11 sanctions against counsel on the grounds that "[i]t was objectively unreasonable for plaintiffs' counsel to file affidavits, delayed deposition errata sheets and supplemental interrogatory answers in which the plaintiffs contradicted their earlier deposition testimony and interrogatory answers." *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000).

As in the cases discussed above, Moreira's and his counsel filed self-contradictory pleadings and refused to correct them. Those pleadings were thus objectively unreasonable. To paraphrase *Polar Int'l Brokerage*, there is simply no non-sanctionable explanation for their conduct. Under the foregoing precedent, Moreira and his counsel clearly violated Rule 11.

### 2. **Moreira's Eleventh-Hour Second Amended Complaint In Little Basil Cannot Save His Claims In The Case At Bar.**

Moreira's Second Amended Complaint in *Little Basil* changing his allegations to make them consistent with those in the case at bar (conveniently filed after he had secured his *Little Basil* settlement and which directly contradicted his *Little Basil* Complaint) does not demonstrate that his complaint in the case at bar is non-frivolous. The Court should disregard the *Little Basil* Second Amended Complaint in its analysis of this motion.

This Court has repeatedly refused to allow parties to escape dismissal by such maneuvers and held that "[w]here a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss ... [and] directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint

as true.'" *Colliton*, 2008 WL 4386764, at *6 (quoting *Wallace v. New York City Dep't of Corr.*, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)).

For example, in *Colliton*, "[a]fter Cravath argued in a pre-motion letter to this Court that [a New York Court of Appeals decision] barred Colliton's suit because he was employed as an attorney, Colliton's amended complaint for the first time asserted that 85% of his value to the firm consisted of his work as a 'specialist,' not an attorney." *Colliton* 2008 WL 4386764, at *6. The Court held that "[t]his is a transparent attempt by plaintiff to amend his pleading in order to avoid a dispositive defense raised by Cravath" and declined to consider the amended pleading on the motion to dismiss. *Id.* This Court has repeatedly applied the same principle. *See James v. Gage*, 2019 WL 1429520, at *6 (S.D.N.Y. Mar. 29, 2019) ("[I]n cases where allegations in an amended pleading directly contradict pleadings in the original complaint, courts have disregarded the amended pleading") (collecting cases, internal quotations and citation omitted). Moreover, this court has also warned that "courts have recourse to impose sanctions if it is later determined that a party, including one proceeding *pro se*, submitted a false pleading solely to survive a motion to dismiss. *Russell v. Hollister Corp.*, 2014 WL 2723236, at *4 (S.D.N.Y. June 17, 2014), report and recommendation adopted, 2014 WL 3928948 (S.D.N.Y. Aug. 8, 2014).

Similarly, in the case at bar, where Moreira has blatantly changed his facts in order to respond to a threat of a motion to dismiss, the Court is authorized to accept the facts described in the original *Little Basil* complaint and the *Little Basil* First Amended Complaint as true.  In other words, the Court should take Moreira at his word that he worked at Little Basil from March 2015 to December 2015, 5:00 p.m. to 10:00 p.m., five days per week (*Little Basil* Compl. ¶¶ 45-46). Moreira's allegations in the Amended Complaint in this case, alleging precisely the same hours during precisely the same time periods which he has still yet to withdraw, should be treated as

what they are: knowingly false and frivolous allegations that Plaintiff has refused to correct despite repeated requests. *See Mr. Broadway* Am. Compl. ¶ 134.

In short, plaintiff cannot render his frivolous allegations in the Amended Complaint non-frivolous by his opportunistic and bad faith second amendment of the *Little Basil* complaint.

### 3.   Moreira's Contradictory Pleadings and Persistence In Perpetuating Falsehoods In This Case Merit Dismissal of His Claims.

Moreira's self-contradictory complaint and refusal to correct it merits dismissal as a sanction under Rule 11 in itself.  Dismissal is even more appropriate here because Moreira also lied in his deposition or his pleadings at least ten times.

In *Colliton*, *supra*, one of the grounds for dismissal of the plaintiff's case was plaintiff's Rule 11 violation resulting from his filing of an amended complaint that blatantly contradicted his original complaint.  The Court held that "[o]ne appropriate sanction [for plaintiff's conduct] is the dismissal of Colliton's Amended Complaint with prejudice. Although the Court has already decided to dismiss the Amended Complaint for failure to state a claim, this sanction under Rule 11 serves as an alternative ground for dismissal." *Colliton*, 2009 WL 4386764, at *15 (citing *Abdelhamid v. Altria Group, Inc.*, 515 F.Supp.2d 384, 400 (S.D.N.Y.2007) (dismissing a complaint pursuant to Fed.R.Civ.P. 12(b)(6) and in the alternate pursuant to Fed.R.Civ.P. 11(c)).

This Court did the same in *Abdelhamid*, *supra* in circumstances similar to this case. In an Amended Complaint, "plaintiff asserted new factual allegations about [defendants] Altria and PMI's corporate activities. These allegations, however, were directly contradicted by the deposition testimony of Altria and PMI corporate officers and appear to be without any grounding in fact. . . . Abdelhamid's counsel did not provide the Court with any evidence of the factual bases for his allegations in his response to the defendants' motion, nor did he even contend that "there is (or likely will be) 'evidentiary support' for the allegation[s]." He also did

not seek to amend his pleading to retract these allegations within the twenty-one day "safe harbor" period." *Id.*, 515 F. Supp.2d at 400.   In light of those facts, the Court found that Abdelhamid's counsel violated Rule 11(b)(3) because "a competent attorney could not form a reasonable belief that [the allegations in the Amended Complaint] were well grounded in fact." *Id.*  While the Court denied defendant's fee request, it found that an "appropriate sanction is the dismissal of Abdelhamid's Amended Complaint with respect to Altria and PMI."  *Id.*  The court added that while it had already decided to dismiss the Amended Complaint for failure to state a claim, "this sanction under Rule 11 serves as an alternative ground for dismissal."  *Id.*

Courts have also dismissed claims under Rule 11 where, as here, the plaintiff's repeated intentional falsehoods can only be construed as a fraud upon the Court that goes to the heart of a case.  The Court should do the same in the case at bar.

For example, in *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 435 (S.D.N.Y. 2016), the Court dismissed a complaint under Rule 11 where the conduct at issue included "knowing fabrication of the critical allegations underlying the complaint that plaintiff must prove in order to win."  *Id.*  The court explained that while "dismissal is a harsh sanction to be used only in extreme situations . . . [w]hen faced with a fraud upon the court ... such a[ ] powerful sanction is entirely appropriate."  *Id.*

Similarly, the Eastern District of New York dismissed a case under Rule 11 where a plaintiff falsified an exhibit, attached it to his opposition to the defendants' motion for summary judgment and "then compounded the fraud on the court by means of the sworn verifications he submitted along with the exhibits" and "lied in court and continued to insist in filings that the defendants had submitted the doctored exhibit as part of the defendants' document production."  *See Hargrove v. Riley*, 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007) ("[Dismissal] is

warranted as [the plaintiff's] forgeries were intentional, he never corrected them once their authenticity was challenged and he continues to insist on their veracity").

In the case at bar, Moreira filed contradictory pleadings that presented a false story that he had worked at two different places at precisely the same time, refused to correct the record and then then lied in his deposition or his pleadings **at least ten (10) times.** *See* Sanon Decl. Exh. "5" (chart setting forth all of the contradictions between the Moreira's deposition testimony, the complaint in this case, and the Little Basil First Amended Complaint).

Within the span of about one month, Moreira has switched his story with regard to his work at Little Basil as follows:

(a) from working one or two schedules (depending on what portions of the deposition testimony one believes) to three schedules; *See* Moriera Tr. 111, 156-157, *Little Basil* SAC ¶¶ 37-39.

(b) from working one day per week during the 2016 to 2017 year to working between three to six days per week during the same year; *See* Moriera Tr. 156-157, *Little Basil* SAC ¶¶ 37-39.

(c) from testifying he only worked 7 hours per week during the March 2016 to March 2017 time period to alleging he actually worked anywhere from 22 to 60 hours per week during that same time period. Moreira Tr. 156-157, *Little Basil* SAC ¶¶ 37-39.

(d) During his deposition, he also testified he never worked seven days per week as alleged in his original complaint in *Little Basil*. Yet, now in his *Little Basil* Second Amended Complaint, he suddenly recalls that he worked 6 days per week for at least one month. Moreira Tr. 161-167, *Little Basil* SAC ¶¶ 37-39.

After all of these machinations, Moreira continues to assert that he worked for Mr. Broadway from March 2015 to December 2015, 5:00 p.m. to 10:00 p.m., five days per week and from January 2016 to February 2016, 5:00 p.m. to 10:00 p.m., on Wednesdays and Thursdays. *See Mr. Broadway* Am. Compl. ¶ 134. Those assertions contradict his deposition testimony in this case and his Complaint and First Amended Complaint in *Little Basil*. As such, they are

frivolous and, in combination with Moreira's lies at his deposition provide ample grounds for dismissal under Rule 11.

**B.** **Alternatively, the Court Should Dismiss Moreira's Claims Pursuant To Its Inherent Power.**

In the alternative, the Court should dismiss Moreira's claims under its inherent power.

The Supreme Court and the Second Circuit have repeatedly held that federal district courts have the inherent power to dismiss lawsuits where a plaintiff is perpetrating a fraud on the court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) ("outright dismissal of a lawsuit" under the court's inherent authority "is within the court's discretion"); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 250 (1944) (district court is warranted in dismissing a case once it learns of the fraud); *Shangold v. Walt Disney Co.*, 275 Fed. App'x 72, 73 (2d Cir. 2008) (affirming dismissal for fraud on the court because "the defendants have established, by clear and convincing evidence, that [the plaintiffs] submitted fraudulent evidence to the district court in order to bolster their claim").

This inherent power may be invoked before a case proceeds to summary judgment or trial. *See, e.g.*, *Shangold*, 2006 WL 71672, at *6 (S.D.N.Y. Jan. 12, 2006), *aff'd*, 275 F. App'x at 73–74; *see also Amfosakyi v. Frito Lay, Inc.*, 496 F. App'x 218, 225 (3d Cir. 2012) (upholding dismissal where record established plaintiff falsified a document produced in discovery that was material to his claim of discrimination and then testified falsely in his deposition about it).

The Court should use its inherent power to dismiss Moreira's claims because he has either brought frivolous claims and/or repeatedly perjured himself. Moreira and the Faillace Firm have had numerous opportunities to correct the record in this case and failed to do so, choosing instead to maintain two conflicting lawsuits for over a year.  Moreira's acts and omissions are the "essence" of a fraud upon the court, which occurs "when a party lies to the court and his

adversary intentionally, repeatedly, and about issues that are central to the truth-finding process." *See McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002).

In determining the appropriate sanction for fraud on the court, the courts in this district have considered: "(1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and when the misconduct was corrected; and (5) whether further misconduct is likely to continue in the future." *McMunn v. Mem'l Sloan–Kettering Cancer Ctr.*, 191 F.Supp.2d 440, 446 (S.D.N.Y.2002); *Scholastic, Inc. v. Stouffer*, 221 F.Supp.2d 425, 444 (S.D.N.Y.2002).

In the case at bar, all five factors point towards the most serious sanction – dismissal: (1) Moreira and Androphy filed obviously false allegations with regard to Moreira's hours of work for a substantial period of time – something the Faillace Firm had been sanctioned for in the recent past. That Moreira and the Faillace Firm persisted in their falsehoods, obtained a settlement from Little Basil, and now seek to obtain damages from Mr. Broadway based on the same allegations, can only be construed as intentional bad faith; (2) Moreira and the Faillace Firm's conduct has prejudiced Defendants by forcing them to defend allegations that never should have been made in the first place; (3) Moreira has engaged in a pattern of misbehavior, i.e., stating ten falsehoods in his complaint or his deposition; (4) Moreira has failed to correct the record after having the opportunity to do so; and (5) Moreira's deceptiveness in his deposition testimony suggests that the misconduct will continue through trial.

Not surprisingly, courts have readily dismissed claims pursuant to their inherent power when faced with circumstances where plaintiffs concoct obviously false allegations.   For example, in *Shangold v. Walt Disney Co.*, plaintiffs were authors who had submitted story

proposals to a publisher owned by defendant, and later sued defendant claiming that defendant published a book similar to plaintiff's 1995 story. Defendant established that the plaintiffs' 1995 submission contained several references to a "Palm Pilot," a device nonexistent when plaintiffs allegedly submitted their story proposal. *Shangold v. Walt Disney Co.*, 2006 WL 71672, at \*5–6 (S.D.N.Y. Jan. 12, 2006), *aff'd*, 275 F. App'x 72 (2d Cir. 2008). Thus, the court found plaintiffs intentionally fabricated the basis for their lawsuit, and bolstered that fabrication with perjury. *Id.* In dismissing plaintiffs' action, the court noted that "no sanction short of dismissal [would] suffice to deter future misconduct." 2006 WL 71672, at \*5. In affirming on appeal, the Second Circuit further stated, "While dismissal is a harsh sanction it 'is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party.'" *Shangold*, 275 Fed. App'x at 74 (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

Likewise, in the case at bar, Moreira made false allegations, then lied in his deposition (or in his pleadings) in a vain effort to cover up his false allegations, suggesting that only dismissal will deter future misconduct by Moreira.

In *McMunn*, *supra*, the Court dismissed a plaintiff's claim when many of the factors present in the case at bar were also present. The *McMunn* court wrote that dismissal was appropriate because the plaintiff acted "intentionally and in bad faith" that was part of "a pattern of misbehavior rather than an isolated instance." *McMunn*, 191 F.Supp.3d at 462. The Court further noted that "McMunn has not even attempted to correct the vast majority of her deceptive conduct" and "perhaps most importantly, it is clear that Ms. McMunn's lies and misconduct will almost certainly continue in the future if this action is permitted to go forward, thus nullifying any chance for a fair adjudication of the merits of her claim. She has shown no remorse for her deceptions, offered no apologies for her lies, and never corrected her misstatements. In short, she

deserves to be punished severely for perpetrating a fraud upon this Court." *Id.* The same can be said about Moreira and his counsel, who have offered no apologies for Moreira's lies and have never corrected their misstatements.

Similarly, applying these same factors, an Eastern District of New York court dismissed a medical malpractice claim brought by a *pro se* prisoner where his "deception was not an isolated instance; he fabricated the dates on many grievance forms, in addition to improperly duplicating notary stamps on complaint letters to make them look authentic." *Hargrove v. Riley*, 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007). The plaintiff had also "submitted these forgeries to defendants during discovery and again as exhibits" to an affidavit. *Id.* The court concluded that "[a] severe sanction is warranted as Hargrove's forgeries were intentional, he never corrected them once their authenticity was challenged and he continues to insist on their veracity." *Id.* Again, much the same can be said of Moreira – he made repeated false statements in pleadings, and his deposition testimony, and has to this day not corrected those false statements.

In summary, under the applicable factors used to assess punishment for fraud on the court and the precedent cited above, dismissal of Moreira's claims is appropriate. In fact, Moreira's case is even more egregious that those discussed above. Moreira has gone so far as to obtain approval of a settlement with a $25,000.00 payment to him against an unrepresented defendant. Simultaneously, Moreira is making assertions in this case that directly contradict what he told this same Court in *Little Basil* while maintaining a studied silence about the proceedings in the case at bar. Moreira's brazenness removes any doubt that dismissal of this case is the appropriate sanction.

## POINT II:
## THE COURT SHOULD AWARD DEFENDANTS THEIR FEES AS A SANCTION UNDER RULE 11 AND THE COURT'S INHERENT POWER

### A. Defendants Should Be Awarded Their Attorneys' Fees and Costs for Defending Moreira's Claims for the Past Year.

In addition to dismissal, the Court should impose upon both Plaintiff and the Faillace Firm Defendants' attorneys' fees and costs incurred for the past year for defending Moreira's objectively unreasonable claims.

If a party violates Rule 11's requirements, courts may impose a sanction against the offending party including, inter alia, "an order directing payment ... of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). "When a court determines that attorneys' fees and costs should be used as sanctions under Rule 11, the award should be based both on the total amount of reasonable attorneys' fees and costs attributable to the sanctioned party's misconduct and the amount needed to serve the deterrent purposes of Rule 11." *Offor v. Mercy Med. Ctr.*, 327 F.R.D. 32, 34 (E.D.N.Y. 2018). (citing *Eastway Const. Corp. v. City of New York*., 821 F.2d 121, 122–23 (2d Cir. 1987)).

The standard for triggering the award of fees under Rule 11 is objective unreasonableness. *In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig*., 712 F. Supp. 2d 255, 265 (S.D.N.Y. 2010). This court has recognized that sanctions may be imposed jointly and severally against an attorney and a party when they share responsibility for a violation of the Rule 11, such as where the party "had actual knowledge that the filing of the paper constituted wrongful conduct." *Lipin v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 140–141 (S.D. N.Y. 2002).

As explained above, the Amended Complaint in this case together with the Complaint in *Little Basil*, allege the impossible—that Mr. Moreira worked in two different places

simultaneously.   Accordingly, an award of fees is merited and this Court has awarded fees when that standard has been met.

For example, in *Watkins v. Smith*, 2013 WL 655085, at *10 (S.D.N.Y. Feb. 22, 2013), the court directed plaintiffs' counsel to pay defendants' attorneys' fees.  There, plaintiffs' counsel filed an amended complaint against five individuals and a business entity who had no connection to the underlying facts that gave rise to plaintiff's suit.  The Court held the submission of the amended complaint violated Rule 11(b)(3) by making factual allegations that were "utterly lacking in evidentiary support."  *Id*. Consequently, the Court held that it would "direct plaintiff's counsel…to pay all of the reasonable attorneys' fees and expenses incurred by the …Defendants…"  *Id.*   As in *Watkins*, in the case at bar, Moreira made allegations "utterly lacking in evidentiary support" because they directly contradicted his *Little Basil* complaints. As such, they are both sanctionable and merit an award of fees to the defendants.

In another example, this Court awarded fees under Rule 11 where the defendant raised affirmative defenses and counterclaims "without the reasonable inquiry required under the circumstances" and "counsel should have withdrawn them early on when plaintiff urged this, not forcing plaintiff to prepare and move for summary judgment which finally caused their evaporation." *Profile Publ'g & Mgmt. Corp. APS v. Musicmaker.com., Inc.*, 242 F. Supp. 2d 363, 367 (S.D.N.Y. 2003).   Similarly, in the case at bar, Moreira should have withdrawn his contradictory allegations and not forced Defendants to continue to defend his claims after Defendants put Plaintiff and his counsel on notice of his claims' frivolity. Plaintiffs' counsel's conduct has not only wasted Defendants' time over the past year, but also the time and resources of the Court, as the Parties have engaged in extensive discovery, settlement negotiations, and, most recently, a second full-day, court-mandated, mediation, all of which incorporated Moreira's

claims.  Moreira's refusal to withdraw the frivolous claims has also necessitated this motion. Accordingly, this Court should direct Plaintiffs' firm to pay Defendants at least one sixth (as Moreira is one of six plaintiffs in this Action) of the attorneys' fees and costs incurred for the past year, plus the fees and costs associated with the making of this motion.

Fees as a sanction are further justified by the fact that the Faillace Firm is a repeat offender and, as such, is subject to harsher punishment in order to serve the deterrent purpose of Rule 11.  *See also*, *Elfoulki v. Brannons Sandwich Shop, LLC*, 2016 WL 3542458, at *3-4 (S.D.N.Y. June 22, 2016) (purpose of Rule 11 is to deter "baseless claims[s]" and "streamline the administration and procedure of the federal courts").

Here, Defendants do not seek all of these fees for the entire litigation, but only those fees occasioned by Moreira's conduct and there is precedent in this Court for doing so.  *See also Schottenstein v. Schottenstein,* 230 F.R.D. 355, 363 (S.D.N.Y. 2005) (imposing sanction of 43% of attorney's fees where claim had asserted three frivolous claims out of seven).

### B.  <u>The Court Should Use Its Inherent Power To Grant Defendants Their Fees and Costs.</u>

An alternative ground for awarding fees to Defendants for the conduct of Moreira and the Faillace Firm is the use of the Court's inherent power to do so.

It is within this Court's discretion "to fashion an appropriate sanction for conduct which abuses the judicial process." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).  Such sanctions include attorneys' fees. *see Scholastic, Inc. v. Stouffer*, 221 F.Supp.2d 425, 444 (S.D.N.Y.2002) (award of attorneys' fees and costs under the Court's inherent power "appropriate given the fact that [defendant] has engaged in a pattern of intentional bad faith conduct and failed to correct her fraudulent submissions, even when confronted with evidence undermining the validity of those submissions"); *Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D.

573, 584 (S.D.N.Y. 1996) (attorneys' fees and costs appropriate under the Court's inherent power because "defendants' conduct led plaintiffs' counsel on an arduous chase").

For the same reasons the Court should award Defendants their fees under Rule 11, the Court should also do so under its inherent power.

**POINT III:**
**THE COURT SHOULD DISQUALIFY PLAINTIFFS' COUNSEL**

The inherent conflict of interest that Moreira's fraud on the Court has created for the Faillace Firm requires that the Faillace Firm be disqualified unless it obtains the informed consent of its other clients to continue despite the conflict.

Lawyers appearing in this Court are required to comply with the New York Rules of Professional Conduct ("New York Rules"). *See* S.D.N.Y. Local Rule 1.3(a). Rule 1.7 bars lawyers from representing a client "if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." New York Rules 1.7(a)(1). "Differing interests" are defined in Rule 1.7(f) to include "every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse or other interest." Rule 1.7 also bars lawyers from representing a client if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." New York Rules 1.7(a)(2).

Plaintiff Moreira's conflicting allegations and false testimony create a concurrent conflict of interest between Moreira and his co-plaintiffs. The Faillace Firm will necessarily have to correct the record, which will entail impugning Moreira's false allegations and testimony. That will negatively affect the Faillace Firm's other clients in this case who will be associated with Moreira by virtue of the fact that they are co-plaintiffs and have common representation.

The Court should therefore require Plaintiffs' counsel to satisfy Rule 1.7(b), which allows representation to continue if "each affected client gives informed consent, confirmed in writing." New York Rule 1.7(b)(4). Absent such proof of informed consent, the Court should disqualify the Faillace firm from representing the Plaintiffs.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to dismiss Plaintiff Moreira's claims under Rule 11 and its inherent power and impose Defendants' attorneys' fees and costs for Defendant Moreira's claims and this motion upon Plaintiff and the Faillace Firm.

Respectfully submitted,

ELLENOFF GROSSMAN & SCHOLE LLP

By:____/S/_____
　　　Amanda M. Fugazy
　　　Paul P. Rooney
　　　Stephania C. Sanon
1345 Avenue of the Americas, 11th Fl.
New York, New York 10105
Tel: (212) 370-1300
*Attorneys for Defendants*

Dated: New York, New York
　　　September 12, 2019